IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STONE & WEBSTER, INC.

   v. : Civil Action No. DKC 11-0131

MIRANT MID-ATLANTIC, LLC

* * * * * * *

STONE & WEBSTER, INC.

   v. : Civil Action No. DKC 11-0132

MIRANT MID-ATLANTIC, LLC

* * * * * * *

STONE & WEBSTER, INC.

   v. : Civil Action No. DKC 11-0133

MIRANT CHALK POINT, LLC

**MEMORANDUM OPINION**

Presently pending and ready for review in these actions to establish mechanics' liens are Defendant-Respondents Mirant Mid-Atlantic LLC and Mirant Chalk Point's challenges to Plaintiff-Petitioner Stone & Webster Inc.'s petition to establish liens (Case No. 11-0131 ECF Nos. 1 and 12; Case No. 11-0132 ECF Nos. 8 and 13; and Case No. 11-0133 ECF Nos. 10 and 15) and Defendants'

motions to stay or in the alternative to transfer (Case No. 11-0131 ECF No. 6; Case No. 11-0132 ECF No. 6; and Case No. 11-0133, ECF No. 8).  A show cause hearing was held on March 21, 2010, and the court now rules.  For the foregoing reasons, the court will issue interlocutory mechanics' liens and Defendants' motions to stay will be granted.

**I.   Background**

Plaintiff Stone & Webster Inc. is a Louisiana corporation engaged in the construction business as a general contractor. Stone & Webster entered into a contract with Defendants Mirant Mid-Atlantic, LLC and Mirant Chalk Point, LLC (now known as GenOn Mid-Atlantic and GenOn Chalk Point) whereby Stone & Webster agreed to design and build certain air quality control systems called wet Flue Gas Desulfurization systems, commonly known as wet scrubbers, associated with power generating units owned by Defendants at three locations in Maryland:  (1) the Dickerson Generating Station located at 21200 Martinsburg Road, Dickerson, Montgomery County, Maryland 20842; (2) the Morgantown Generating Station located 12620 Crain Highway, Newburg, Charles County, Maryland 20664; and (3) the Chalk Point Generating Station located at 25100 Chalk Point road, Aquasco, Prince George's County, Maryland 20608.  The terms of the parties' agreement are set forth in the Engineering, Procurement and

Construction Agreement (the "Turnkey Agreement") dated July 30, 2007. (ECF No. 1-1)[1].

Stone & Webster alleges in these cases the right to mechanics' liens based on certain invoices it issued to Defendants for work completed pursuant to the Turnkey Agreement. In Case No. 11-131 Stone & Webster seeks to obtain a lien in the amount of $46,842,428.87 against the Dickerson Plant; in Case No. 11-132 Stone & Webster seeks to obtain a lien in the amount of $29,841,924.23 against the Morgantown Plant; and in Case No. 11-133 Stone & Webster seeks to obtain a lien in the amount of $26,483,734.48 against the Chalk Point Plant. Although Defendants dispute that Stone & Webster is owed these sums, the merits of the underlying contractual dispute will be decided in a separate case pending in the United States District Court for the Southern District of New York in accordance with the forum selection clause in the Turnkey Agreement which specifies that all disputes arising out of the agreement must be resolved under the laws of New York by a court located in Manhattan. Defendants do not dispute that Plaintiffs have alleged facts sufficient to raise the probable cause necessary for this court

---

[1] Aside from references to the specific properties and the specific amounts of the liens being sought, the papers submitted in the three cases are similar when not identical. This opinion cites to the docket for Case No. 11-0131 unless otherwise specified.

to issue an interlocutory lien. The only issue presently before this court is whether Stone & Webster has adequately identified the buildings sought to be the subject of the interlocutory mechanics' liens.[2] Defendants contend that Stone & Webster is not entitled to interlocutory liens and submitted an "Omnibus Bench Brief For Show Cause Hearing" that sets forth their position that the lien petitions are legally insufficient. (ECF No. 13). Although not styled as such, this brief is akin to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and will be treated as such.

## II. Analysis

The requirements and procedures for obtaining a mechanics' lien are set forth in Md. Code Ann., Real Prop. § 9-101 *et seq.* Section 9-102 specifies the types of property which may be subject to a mechanics' lien and states in relevant part:

> Every building erected and every building repaired, rebuilt, or improved to the extent of 15 percent of its value is subject to establishment of a lien in accordance with

---

[2] Defendants filed a motion to stay or transfer the cases based on the forum selection clause in the Turnkey Agreement. (ECF No. 6). Stone & Webster filed an opposition, but agrees that the underlying payment disputes should be settled by a New York court. Both parties also now agree that this court has jurisdiction and should decide the issue of whether interlocutory liens are appropriate before imposing a stay. *See Brendsel v. Winchester Const. Co., Inc.*, 392 Md. 601, 617 (2006)(citing *Caretti, Inc. v. Colonnade Ltd.*, 104 Md.App. 131 137 (1995).

>  this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, . . . .

Section 9-105 sets forth the information that must be included in a petition to establish a lien:

> 1) A petition to establish the mechanic's lien, which shall set forth at least the following:
>
> (i) The name and address of the petitioner;
>
> (ii) The name and address of the owner;
>
> (iii) The nature or kind of work done or the kind and amount of materials furnished, the time when the work was done or the materials furnished, the name of the person for whom the work was done or to whom the materials were furnished and the amount or sum claimed to be due, less any credit recognized by the petitioner;
>
> (iv) A description of the land, including a statement whether part of the land is located in another county, and a description adequate to identify the building; and
>
> (v) If the petitioner is a subcontractor, facts showing that the notice required under § 9-104 of this subtitle was properly mailed or served upon the owner, or, if so authorized, posted on the building. If the lien is sought to be established against two or more buildings on separate lots or parcels of land owned by the same person, the lien will be postponed to other mechanics' liens unless the petitioner designates the amount he claims is due him on each building; . . . .

The only definition of "building" appears in Section 9-101: "any unit of a nonresidential building that is leased or separately sold as a unit."

Here Defendants contend that Stone & Webster's petitions fall short with respect to the requirement in § 9-105(1)(iv) to provide "a description adequate to identify the building." Defendants contend that Stone & Webster's petitions seek to encumber the entirety of multi-acre parcels of property upon which rest numerous buildings and do not adequately describe a specific building or buildings. (ECF No. 12, at 3-4). Stone & Webster counters that its petitions adequately describe the buildings upon which it performed work and notes that its descriptions align with the provisions of the Turnkey agreement setting forth the scope of Stone & Webster's work on the projects. (ECF No. 14).

There is limited case law interpreting the relevant provisions of the Maryland code. As a general matter the lien statute is remedial and should be construed so as to give effect to its purpose—to provide for the general welfare and to encourage construction by ensuring that those who contribute to a construction project are compensated for their work. *See Barry Props. V. Fick Bros.*, 277 Md. 15, 18 (1976)(superseded by statute on other grounds); *Freeform Pools, Inc. v. Strawbridge*

6

*Home for Boys*, 228 Md. 297, 301 (1962). "Nevertheless the law is also a creature of statute and may not be applied to cases and facts 'beyond the obvious designs and plain requirements of the statute.'" *Jaguar Techs., Inc. v. Cable-LA, Inc.*, 229 F.Supp.2d 453, 456-57 (D.Md. 2002). In keeping with these general principles, Maryland courts have held that an adequate description is one which would enable an owner or prospective creditor to identify the building to which the lien attaches. *Arfaa v. Martino*, 404 Md. 364, 379 (2008). In two decisions from the Maryland Court of Special Appeals, relied on by Defendants, petitions were dismissed in part due to inadequate building descriptions. *See Mervin L. Blades & Son, Inc. v. Lighthouse Sound Marina & Country Club*, 377 Md.App. 265, 275 (1977); *Scott & Wimbrow v. Wisterco Inv. Inc.*, 36 Md.App. 274 (1977). In *Mervin L. Blades* the plaintiff sought to enforce a mechanics' lien claim pursuant to a contract whereby it had "furnished materials and labor in connection with the construction of 'a main core and tennis court building or buildings.'" 377 Md.App.at 271. The petition itself referenced "a building or buildings" with nothing more to identify them, and the attached materials contained only a copy of the deed for the real property upon which the building(s) were located. *Id.* at 274. The Court of Special Appeals affirmed the lower court's

7

dismissal of the lien petition because it contained no description from which anyone could identify the building or buildings. *Id.* In *Scott & Wimbrow* the lienholder claimed a lien against "the structures at Lighthouse Sound, St. Martins Neck, Maryland and against the property on which such structure is situated," 36 Md.App. at 277, and the petition's attachments included only a copy of the deed for the real estate. *Id.* at 278. Here again, the description of the building was deemed inadequate. *Id.* But in the more recent Court of Appeals decision in *Arfaa*, that court found that a petition which provided the street address for the residence to which the lien should attach was sufficient to withstand a motion to dismiss. 404 Md. at 397. *Arfaa* noted that the petitioner had not relied solely on the street address but had also submitted a tax map parcel number, a printout from the SDAT containing unique descriptive information about the property, an affidavit, and 141 photographs of the residence. *Id.* at 383. The *Arfaa* court deemed this more than adequate to distinguish *Scott & Wimbrow* and *Mervin L. Blades*. *Id.* at 388.

Here Stone & Webster has also provided sufficient identifying information about the buildings to which the liens should attach to distinguish this case from *Scott & Wimbrow* and *Mervin L. Blades*. Using Case No. 11-131 involving the Dickerson

8

Plant as an illustration, in the petition itself Stone & Webster requests only a mechanic's lien "against the Dickerson Property of Mirant, and the improvements thereon." (ECF No. 1 ¶ B). Earlier in the petition, however, Stone & Webster more specifically identifies the work for which it is seeking to obtain a lien as "construction services performed by Stone & Webster at the Dickerson Generating Station project site" and provides the address "21200 Martinsburg Road, Dickerson, Montgomery County, Maryland 20842" for the property. (*Id.* ¶¶ 5-6). In addition, Stone & Webster attached a copy of the parties' Turnkey Agreement to its petitions and that agreement further defines and identifies the buildings upon which Stone & Webster's work was performed.[3] The scope of Stone & Webster's work is set forth in Exhibit 1 to the Turnkey Agreement-the FGD Scope Book. (ECF No. 12-8). The scope book sets forth the work that Stone & Webster was responsible for completing and states:

> Contractor shall design, procure, manufacture, furnish, deliver (FOB jobsite),

---

[3] Courts may properly consider documents attached to the complaint as well as documents not attached but referenced therein when testing the legal sufficiency of a pleading. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)(citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007). Here Stone & Webster attached and submitted part of the Turnkey Agreement with its petition for a lien (ECF No. 1-1). Other portions of the contract were submitted by Defendants as exhibits to the Omnibus Bench Brief (ECF No. 12-8).

> unload, place in storage as required, remove from storage, erect, checkout, tune, test, and place in successful continuous operation one wet Flue Gas Desulfurization (FGD) system[4] at each of the following stations: Morgantown Units F1 and F2, Chalk Point Units E1 and E2 and Dickerson Units E1, E2, and EE.

(*Id.* at § 3.2). Section 1.38 of the Turnkey Agreement defines Dickerson as "the power station known as 'Dickerson Plant' located at 21200 Martinsburg Road, Dickerson MD 20842 consisting of units D1, D2 and D3." Similar definitions, including street addresses and specific unit references are provided in §§ 1.19 and 1.86 for the Chalk Point and Morgantown Plants respectively. The agreement also defines "Facilities" in § 1.52 to mean "the Morgantown, Chalk Point and Dickerson power stations" and "site" in § 1.124 as "a site upon which a Facility is located and upon which the systems will be constructed." Reading these terms and provisions together one can discern that the buildings to which Stone & Webster's requested liens should attach are those that comprise the Dickerson, Morgantown and Chalk Point Power Plants

---

[4] FGD system is defined in § 1.56 of the Turnkey agreement as "the total equipment, materials, tools and supplies supplied by Contractor for each fully operable flue gas desulfurization unit as described in Exhibit I, including the associated balance of plant ("BOP") required to meet the Input Guarantees, Output Guarantees and Operational Guarantees applicable to an FGD."

and consisting of the specific units referenced for each in the Turnkey Agreement with the connected FGD systems.[5]

## III. Conclusion

Defendants have not challenged any other aspect of Plaintiff's petitions for interlocutory liens. Accordingly, Defendants' motion to dismiss will be denied and interlocutory liens orders will be issued for the three properties. Separate Orders will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[5] At the hearing, Defendants expressed concern that Stone & Webster's lien could be interpreted to cover buildings that Stone & Webster had not improved in any way, such as the Gypsum Dewatering Plant which is expressly reserved as the owner's responsibility under the terms of the Turnkey Agreement. (*See* ECF No. 1-1, §§ 5.1.5, 5.2.). Section 5.2 states in part that "Owner will engage a Separate Contractor to engineer, procure and construct a Gypsum Dewatering Plant for each of the Facilities." It is clear from the contract the Gypsum Dewatering Plant is separate and distinct from the Power Station Facilities and that the liens would not pertain to them.